## Erman-Howell & Co., Inc., v. Meltzer et al.

*Harry R. Levy*, for plaintiff.

*Allen H. Berkman* and *M. D. Wedner*, for defendants.

SOFFEL, J., June 21, 1945.—Erman-Howell & Company, Inc., plaintiff, recovered a judgment against Max Meltzer, defendant, in the sum of $2,816.16, with in-

terest from February 10, 1943, at no. 206, April term, 1942, in the Court of Common Pleas of Allegheny County, Pa. This judgment is unpaid. On April 18, 1945, plaintiff issued a writ of attachment execution and summoned as garnishee Steel Trading Corporation. The writ of attachment execution is in the form prescribed by the Act of June 16, 1836, P. L. 755, relating to executions.

Eight interrogatories were addressed to garnishee. The first four interrogatories were answered. Garnishee stated that it employs defendant in an executive capacity at a weekly wage of $175; that said wages had been paid to defendant up to the time of attachment; that under the laws of the Commonwealth of Pennsylvania said wages are exempt from attachment; further, that defendant owes garnishee $575 on a loan made to defendant by garnishee.

Garnishee refused to answer the following interrogatories:

"Fifth Interrogatory.—State what position, if any, defendant holds with the Steel Trading Corporation and what contract of employment he has with the Steel Trading Corporation, specifying if written or oral and, if in writing, attach a copy thereof to your answer and state the compensation provided for by his contract and when and how payable and whether the same is payable on a percentage basis of business produced and if so the rate of percentage and the amount due him thereunder at the time of service of this writ upon you.

"Sixth Interrogatory.—State what, if any, stock is owned by defendant in the Steel Trading Corporation, the number of shares, par value of each share.

"Seventh Interrogatory.—State when the stock held by defendant was purchased by him and what part of the purchase price was then paid by him.

"Eighth Interrogatory.—State what, if any, stock in the Steel Trading Corporation is held by defendant's

wife, Anna B. Meltzer, number of shares, when acquired, the par value thereof and the amount paid to the company therefor and by whom."

The case is before the court on petition of defendant to quash the writ of execution attachment or for a dissolution of attachment insofar as it applies to wages, and also on motion of garnishee to strike interrogatories from the record.

At the time of argument the rule to show cause why the writ of execution attachment should not be quashed was made absolute insofar as said writ attempts to attach wages due or to become due from garnishee to defendant.

The fifth interrogatory, which attempts to elicit information relative to wages or compensation due defendant which are expressly exempt from attachment, is therefore stricken from the record.

The eighth interrogatory, which attempts to elicit information relative to stock held by defendant's wife, is stricken from the record, counsel for plaintiff stating at the time of argument that he does not press a reply to said interrogatory, and it further appearing that the information therein sought to be discovered is wholly incompetent, irrelevant, and immaterial to the issue raised by the instant proceedings.

This leaves for consideration the sixth and seventh interrogatories. Involved in the determination of the question whether garnishee should be required to answer said interrogatories is the substantial right of plaintiff to attach stock of Steel Trading Corporation which may belong to defendant.

That stock of a defendant debtor may be attached in an attachment execution proceeding is a well-established principle of law.

Sections 32, 33, 34, and 37 of the Act of June 16, 1836, P. L. 755, 12 PS §2265, provide methods for levying an execution upon stock.

The provisions of the Act of 1836, supra, relative to the attachment of stock, are further reënforced by the Uniform Stock Transfer Act of May 5, 1911, P. L. 126, 15 PS §313. Sections 13 and 14 of said act read as follows:

"Section 13. No attachment or levy upon shares of stock for which a certificate is outstanding shall be valid until such certificate be actually seized by the officer making the attachment or levy, or be surrendered to the corporation which issued it, or its transfer by the holder be enjoined. Except where a certificate is lost or destroyed, such corporation shall not be compelled to issue a new certificate for the stock until the old certificate is surrendered to it.

"Section 14. A creditor whose debtor is the owner of a certificate shall be entitled to such aid from courts of appropriate jurisdiction by injunction and otherwise, in attaching such certificate or in satisfying the claim by means thereof, as is allowed at law or in equity in regard to property which can not readily be attached or levied upon by ordinary legal process."

It is argued by counsel for garnishee that under the Uniform Stock Transfer Act, supra, no certificate of stock was in fact actually seized by the sheriff; since there has been no attachment of stock as required by the act of assembly, garnishee is not required to answer interrogatories relating to same; plaintiff has sufficient remedies at law to reach such stock if it exists.

In the case of Mills v. Jacobs et al., 333 Pa. 231, on a judgment against defendant, plaintiff issued an attachment execution wherein the Citizens Bank of Parsons, a Pennsylvania corporation, was summoned as garnishee. In answer to interrogatories garnishee stated that it had in its possession four certificates of stock of foreign corporations—one certificate of a Virginia corporation, three certificates of Delaware corporations—

duly assigned in blank by defendant and delivered to garnishee as collateral security for its demand note. The lower court entered judgment for plaintiff for the certificates and assignments thereof subject to the payment to the garnishee of the amount for which they were pledged, and ordered that a writ of fieri facias be awarded to sell all the right, title and interest of defendant in the stock and the certificates. The writ issued and the sheriff levied upon the certificates and took them into possession. The Supreme Court, in considering these facts, held that under the Uniform Stock Transfer Act certificates of stock of a foreign corporation may be subject to attachment execution in this State, and defendant's interest in shares assigned and delivered by him to a garnishee bank as collateral security for a note unpaid can be reached if, but not unless, by the law of the State of incorporation the certificate embodies the share for the purpose of attachment execution.

In Bateh v. Shihadeh et al., 21 D. & C. 70, the court considered sections 13 and 14 of the Uniform Stock Transfer Act of 1911 in a petition to dissolve an attachment execution. In this case Bateh obtained a judgment against Shihadeh and issued an attachment execution which was served upon Shihadeh, a corporation. Instead of answering the interrogatories served upon it garnishee obtained a rule to show cause why the attachment should not be dissolved. The petition supporting the rule alleged that defendant was the owner of certain stock of garnishee, that said stock had not been surrendered to garnishee and that no proceedings to enjoin the transfer or negotiation of the stock were instituted. These facts as alleged were neither admitted nor denied by the answer of plaintiff. In the opinion by Knight, P. J., the court held (p. 71):

"The plaintiff was within his rights when he issued the attachment execution, and the proper service of

the writ on the garnishee is not denied. There is nothing before us to show that the only property of the defendant in the hands of the garnishee was the debt due defendant on shares of its capital stock. For this reason alone, the present rule should be discharged. Assuming, however, that only the stock of defendant in garnishee were involved, still we think the latter should answer the interrogatories. We can find no case in which the exact question has been raised and decided. In Edward F. Henson & Co. v. Stetser et al., 26 Dist. R. 155, 156, Judge Ferguson, in considering the language of the two sections of the Act of 1911 above quoted, said:

" 'We do not understand this to mean that an execution or an attachment may not issue, but rather that they shall not be effective except under the conditions stated.'

"We agree that this is a correct interpretation of the act, but the question still remains, at what point must ancillary proceedings in equity be instituted—before the filing and answering of the interrogatories, or afterward?

"Reading the fourteenth section of the act of 1911, above quoted, leads to the conclusion that it was the intention of the legislature that the courts should lend their aid to the attaching creditor in satisfying his claim by levy upon property of the debtor not readily seized by ordinary legal process.

"It is conceded that the present attachment cannot be made effective until the holder of the stock is enjoined from transferring the same. The information necessary to file a bill for this purpose can best be obtained from answers to interrogatories."

In construing the effect of the Act of 1911 under the facts of the Bateh case here considered, paragraph 1 of the syllabus reads:

"Sections 13 and 14 of the Uniform Stock Transfer Act of 1911 prevent an attachment of shares of stock

in the hands of the issuing corporation from becoming effective until the holder is enjoined from transferring the shares, but do not invalidate proceedings in attachment execution against the issuer or excuse it from the duty of answering interrogatories addressed to it by the judgment creditor."

Section 35 of the Act of June 16, 1836, P. L. 755, 12 PS §2265, provides as follows:

"In the case of a debt due to the defendant, or of a deposit of money made by him, or of goods or chattels pawned, pledged, or demised, as aforesaid, the same may be attached and levied in satisfaction of the judgment, in the manner allowed in the case of a foreign attachment, but in such case a clause, in the nature of a scire facias against a garnishee in foreign attachment, shall be inserted in such writ of attachment, requiring such debtor, depository, bailee, pawnee, or person holding by demise as aforesaid, to appear at the next term of the court, or at such other time as the court from which such process may issue shall appoint, and show cause why such judgment shall not be levied of the effects of the defendant in his hands."

The sheriff's return of service of the writ in the instant case reads as follows:

"Attached as within commanded all the goods, chattels, moneys and effects of the within named garnishee in whose hands or possession said goods are supposed to be, at the same time declaring that the said goods and effects were attached as the property of the defendant and at the same time, I summoned Steel Trading Corporation as garnishee by handing a true and attested copy of the within writ, together with interrogatories to Max Meltzer, vice president, at their place of business, 1715 Clark building, Pittsburgh, Pa., making known to him the contents thereof and n. e. i. as to the within named defendant."

Defendant contends that the sheriff's return does not specifically state that stock was attached. The return

is in the language prescribed by the act of assembly and, in our judgment, is sufficiently inclusive to cover all property that may be properly attached under the act. We see no merit to defendant's contention in this respect. The sheriff regularly makes a uniform return in accord with the language prescribed by the act of assembly and is not required to particularize and state the particular form or nature of the property attached. The words "goods and effects" are broad and comprehensive enough to include money deposits as well as stock and other evidences of indebtedness.

It is our conclusion that garnishee should be required to answer the sixth and seventh interrogatories. Section 55 of the Act of June 13, 1836, P. L. 568, 12 PS §2995, provides as follows:

"After judgment as aforesaid it shall also be lawful for the plaintiff to exhibit in writing, to every garnishee as aforesaid, all such interrogatories as he may deem necessary, touching the estate and effects of the defendant in his possession or charge, or due and owing from him, as the case may be, to the defendant, at the time of the service of such writ, or at any other time, and cause the same to be filed of record in the cause."

It is to be noted that under this act plaintiff may file such interrogatories as he may deem necessary, the only limitation being that they touch upon the effects and estate of defendant in the garnishee's possession or charge, or due and owing from garnishee to defendant.

Further, we do not agree with the interpretation of counsel for garnishee of sections 13 and 14 of the Uniform Stock Transfer Act of 1911, supra. We do not understand said act to mean that an execution attachment may not issue but rather shall not be effective except under the conditions stated. This matter is well considered in the case of Edward F. Henson & Co. v. Stetser et al., 26 Dist. R. 155. This was a case in which judgment was entered against defendant and attach-

ment execution issued summoning a garnishee. Interrogatories were filed, the answers to which showed that defendant held certain shares of capital stock of the corporation, the garnishee. A motion had been made for judgment against garnishee and to restrain defendant and garnishee from transferring or permitting the transfer of the capital stock. After referring to the history of attachments upon stock of a corporation by referring to the Act of 1819, the Act of 1836, and the Act of 1911, Judge Ferguson said (p. 156) :

"If uncertainty existed as to the precise method of obtaining for a creditor the value of shares of stock held in the name of his debtor, the Act of 1911 seems to provide for equitable relief in aid of the proceeding at law. The act declares that no levy or attachment shall be valid unless the certificate of stock be actually seized or surrendered to the company which issued it or its transfer enjoined. We do not understand this to mean that an execution or an attachment may not issue, but rather that they shall not be effective except under the conditions stated. Under section 14 of the Act of 1911 the right of the creditor to the assistance of a court of equity is granted, but it is merely a declaration of his right and not a prescription of the method by which relief is to be obtained. In the case of an attachment or a levy, therefore, the aid of a chancellor must be invoked to mould a suitable decree when the certificate has not been actually seized by the officer of the court."

The motion to strike the sixth and seventh interrogatories from the record will therefore be refused.

### Order of Court

And now, to wit, June 21, 1945, the motion of garnishee to strike from the record the fifth, sixth, seventh, and eighth interrogatories is granted as to the fifth and eighth interrogatories, and refused as to the sixth and seventh interrogatories.